Consolidated Case Nos. 13-7 (L) and 16-2

In the
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

ANTHONY BERNARD JUNIPER,
*Petitioner-Appellant*

v.

DAVID W. ZOOK, WARDEN,
SUSSEX I STATE PRISON,
*Respondent-Appellee*

---

On Appeal from the United States District Court
for the Eastern District of Virginia
Richmond Division

---

# BRIEF OF RESPONDENT-APPELLEE DAVID W. ZOOK, WARDEN, SUSSEX I STATE PRISON

---

Mark R. Herring
ATTORNEY GENERAL OF VIRGINIA

*Matthew P. Dullaghan*
*SENIOR ASSISTANT ATTORNEY GENERAL*
*COUNSEL OF RECORD*

OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-4073
(804) 786-1108 (facsimile)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 13-7,16-2 Caption: Anthony Juniper v. David Zook, Warden

Pursuant to FRAP 26.1 and Local Rule 26.1,

David W. Zook, Warden, Sussex I State Prison
(name of party/amicus)

who is Respondent-Appellee, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(a)(2)(B))? ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Matthew P. Dullaghan Date: April 3, 2017

Counsel for: David W. Zook, Warden

## CERTIFICATE OF SERVICE

**************************

I certify that on April 3, 2017 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Matthew P. Dullaghan
(signature)

April 3, 2017
(date)

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ........ i

TABLE OF AUTHORITIES ........ v

STATEMENT OF THE CASE ........ 1

I. Proceedings ........ 1

II. Facts of Juniper's Crimes ........ 5

STANDARDS OF REVIEW ........ 10

SUMMARY OF ARGUMENT ........ 11

ARGUMENT ........ 13

I. The district court properly dismissed the defaulted *Brady* claim because the information was not material. (Claim I) ........ 13

A. Claims alleging violations of a prosecutor's due process obligations must establish that the information at issue is material. ........ 14

B. The summary notes do not undermine confidence in the verdicts. ........ 15

II. The district court properly dismissed Juniper's unexhausted claim that he was denied the effective assistance of counsel on appeal. (Claim V(G)) ........ 23

III. Juniper's defaulted claim that his trial counsel were ineffective in arguing that the prosecutor violated *Batson v. Kentucky* was not substantial under *Martinez*. (Claim VI) ........ 31

A. Juniper failed to establish that the defaulted claim was substantial. ........ 35

B. Juniper failed to establish that his state habeas counsel were ineffective in failing to present the defaulted claim. ....................44

IV. Juniper's defaulted claim that his trial counsel were ineffective in objecting to the trial court's exclusion of evidence of Juniper's future dangerousness in prison had no merit, and he therefore failed to establish that *Martinez* excused his default. (Claim VII). ....................46

A. Juniper failed to establish that the defaulted claim was substantial. ....................47

B. Juniper failed to establish that his state habeas counsel were ineffective in failing to present the defaulted claim. ....................55

CONCLUSION ....................57

Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements ....................58

Certificate of Service ....................59

## TABLE OF AUTHORITIES

Page

**Cases**

*Apprendi v. New Jersey*, 530 U.S. 466 (2000)........................................................23

*Banks v. Dretke*, 540 U.S. 668 (2004). ................................................................19

*Bell v. Commonwealth*, 563 S.E. 2d 695 (Va. 2002). .............................................54

*Bell v. Ozmint*, 332 F.3d 229 (4th Cir. 2003)........................................................11

*Bracy v. Gramley*, 520 U.S. 899 (1997). ..............................................................44

*Brady v. Maryland*,373 U.S. 83 (1963). ............................................ 14, 15, 16, 23

*Briley v. Bass*, 584 F. Supp. 807 (E.D. Va.),
*aff'd*, 750 F.2d 1238 (4th Cir. 1984). ..................................................................29

*Broady v. Commonwealth*, 429 S.E.2d 468 (Va. Ct. App. 1993). ............................37

*Buck v. Commonwealth*, 443 S.E.2d 414 (Va. 1994). ............................................36

*Bunch v. Thompson*, 949 F.2d 1354 (4th Cir. 1991)........................................ 24, 25

*Burns v. Commonwealth*, 541 S.E. 2d 872 (Va. 2001)...........................................54

*Cherrix v. Commonwealth*, 513 S.E. 2d 642 (Va. 1999)................................. 50, 54

*Clabourne v. Ryan*, 745 F.3d 362 (9th Cir. 2014). .................................................33

*Coleman v. Thompson*, 501 U.S. 722 (1991)..........................................................32

*Coleman v. Thompson*, 895 F.2d 139 (4th Cir. 1990),
*aff'd*, 501 U.S. 722 (1991). ...................................................................................44

*Cullen v. Pinholster*, 563 U.S. 170 (2011)...............................................................46

*Darden v. Wainwright*, 477 U.S. 168 (1986)...........................................................25

*Eddings v. Oklahoma*, 455 U.S. 104 (1982). ..........................................................54

*Evans v. Smith*, 220 F.3d 306 (4th Cir. 2000)..........................................................42

*Evitts v. Lucey*, 469 U.S. 387, 394 (1985) ....................34

*Fisher v. Angelone*, 163 F.3d 835 (4th Cir. 1998). ....................31

*Foster v. Chapman*, 136 S. Ct. 1737, 195 L. Ed. 2d 1 (2016). ....................40

*Fowler v. Joyner*, 753 F.3d 446 (4th Cir. 2014),
*cert. denied*, 135 S. Ct. 1530 (2015)). ....................32

*Gardner v. Florida*, 430 U.S. 349 (1977). .................... 52, 53, 54

*Gray v. Netherland*, 518 U.S. 152 (1996). .................... 31, 32

*Harrington v. Richter*, 562 U.S. 86 (2011). .................... 24, 25, 45, 46

*Hernandez v. New York*, 500 U.S. 352 (1991). .................... 35, 36, 41, 42

*Hoke v. Commonwealth*, 377 S.E.2d 595 (Va. 1989). .................... 29, 30, 31

*Honeycutt v. Mahoney*, 698 F.2d 213 (4th Cir. 1983). ....................30

*Jones v. Barnes*, 463 U.S. 745 (1983). ....................34

*Juniper v. Commonwealth*, 626 S.E.2d 383, 48 (Va.),
*cert. denied*, 549 U.S. 960 (2006). .................... passim

*Juniper v. Davis*, 737 F.3d 288 (4th Cir. 2013). ....................3, 4

*Juniper v. Kelly*, 132 S. Ct. 572 (2011). ....................3

*Juniper v. Kelly*, 132 S. Ct. 822 (2011). ....................3

*Juniper v. Virginia*, 549 U.S. 960 (2006). ....................2

*Juniper v. Warden*, 707 S.E.2d 290 (Va. 2011). ....................2, 28

*Juniper v. Warden*, Record No. 111721 (Va. Oct. 4, 2011). ....................2

*Kimmelman v. Morrison*, 477 U.S. 365 (1986). ....................24

*Knowles v. Mirzayance*, 556 U.S. 111 (2009). ....................56

*Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995). ....................49

*Lawlor v. Commonwealth*, 738 S.E.2d 847 (Va. 2013). ....................50

*Lockett v. Ohio*, 438 U.S. 586 (1978). ........................................ 50, 51, 54

*Lovitt v. Commonwealth*, 537 S.E.2d 866 (2000). ........................................46

*Mallory v. Smith*, 27 F.3d 991 (4th Cir. 1994)........................................27

*Martinez v. Ryan*, 566 U.S. 1 (2012). ........................................ passim

*Miller-El* v. *Cockrell*, 537 U. S. 322 (2003). ........................................33

*Miller-El v. Dretke*, 545 U.S. 231 (2005). ........................................36

*Moody v. Polk*, 408 F.3d 141, 151 (4th Cir. 2005). ........................................ 46, 54

*Morva v. Zook*, 821 F.3d 517 (4th Cir. 2016),
*cert. denied*, 197 L. Ed. 2d 177 (2017)........................................48

*Muhammad v. Kelly*, 575 F.3d 359 (4th Cir. 2009). ........................................11

*O'Sullivan v. Boerckel*, 526 U.S. 838 (1999) ........................................ 13, 32

*Porter v. Commonwealth*, 661 S.E.2d 415 (Va. 2008). ........................................50

*Premo v. Moore*, 562 U.S. 115 (2011)........................................ 45, 56

*Prieto v. Commonwealth*, 682 S.E.2d 910, 931 (Va. 2009). ........................ 28, 29, 30

*Rice v. Collins*, 546 U.S. 333 (2006). ........................................40

*Ring v. Arizona*, 536 U.S. 584 (2002)........................................ 23, 30, 31

*Schmitt v. Kelly*, 189 Fed. Appx. 257 (4th Cir. 2006). ........................................54

*Schriro v. Landrigan*, 550 U.S. 465 (2007). ........................................11

*Sharpe v. Bell*, 593 F.3d 372 (4th Cir. 2010). ........................................ 11, 35

*Simmons v. South Carolina*, 512 U.S. 154 (1994). ........................................ 52, 53, 54

*Skipper v. South Carolina*, 476 U.S. 1 (1986). ........................................ 52, 53, 54

*Smith v. Murray*, 477 U.S. 527 (1986)........................................34

*Stamper v. Muncie*, 944 F.2d 170 (4th Cir. 1991). ........................................ 45, 56

*Strickland v. Washington*, 466 U.S. 668 (1984). ............................................ passim

*Strickler v. Greene*, 527 U.S. 263 (1999). ................................................ 14, 16, 23

*Sumner v. Mata*, 449 U.S. 539 (1981). ........................................................................11

*Swarthout v. Cooke*, 562 U.S. 216 (2011) (*per curiam*)........................................29

*Teleguz v. Pearson*, 689 F.3d 322 (4th Cir. 2012)...............................................11

*Teleguz v. Zook*, 806 F.3d 803 (4th Cir. 2015),
*cert. denied*, 137 S. Ct. 95 (2016).................................................... 26, 32, 33, 55

*Tennard v. Dretke*, 542 U.S. 274 (2000). .........................................................51

*Tuggle v. Netherland*, 516 U.S. 1(1995) (per curiam)..........................................55

*United States v. Bagley*, 473 U.S. 667 (1985). ..................................................15

*United States v. Johnson*, 223 F.3d 665 (7th Cir. 2000)........................................52

*United States v. McNamara*, 74 F.3d 514 (4th Cir. 1996). .....................................30

*Walker v. Commonwealth*, 515 S.E. 2d 565 (Va. 1999). .......................................50

*Walker v. Kelly*, 589 F.3d 127 (4th Cir. 2009)................................................ 11, 15

*Williams v. Taylor*, 529 U.S. 362 (2000). ..........................................................54

*Winston v. Kelly*, 592 F.3d 535 (4th Cir. 2010) ...................................................11

*Woodson v. North Carolina*, 428 U.S. 280 (1976). ...............................................50

*Wright v. Angelone*, 151 F.3d 151 (4th Cir. 1998). ...............................................29

*Young v. Conway*, 698 F.3d 69 (2d Cir. 2012). ...................................................22

**Statutes**

28 U.S.C. § 2254 ....................................................................................11

28 U.S.C. § 2254(b)(1)(a). ........................................................................13

28 U.S.C. § 2254(e)(1)..................................................................... 11, 35, 42

Va. Code Ann. § 19.2-163.7. ........................................................................2

Va. Code Ann. § 19.2-264.4. ........................................................................1

Va. Code Ann. § 53.1-232.1 .........................................................................2

**Rules**

VA. SUP. CT. R. 5:7A(g).............................................................................45

**Treatises**

Means, FEDERAL HABEAS MANUAL, A GUIDE TO HABEAS CORPUS LITIGATION (2016).................................................................................................33

## STATEMENT OF THE CASE

### I. Proceedings

A Norfolk, Virginia, jury convicted Juniper of four counts of capital murder; four separate offenses of the illegal use of a firearm; and, breaking and entering while armed with a deadly weapon.[1] In a separate sentencing proceeding on the non-capital offenses, the jury sentenced Juniper to a total of life plus eighteen years in prison.[2] In a second separate sentencing proceeding, the jury sentenced Juniper to death for each of the capital murder convictions, finding both that Juniper's conduct in committing the murders was outrageously or wantonly vile, horrible, or inhuman, and that there is a probability that Juniper would commit criminal acts of violence that would constitute a continuing serious threat to society.[3]

The trial court imposed the sentences fixed by the jury, and it entered final judgment.[4] The Supreme Court of Virginia unanimously affirmed Juniper's

---

[1] *Juniper v. Commonwealth*, 626 S.E.2d 383, 393 (Va.), *cert. denied*, 549 U.S. 960 (2006).

[2] *Id.*

[3] *Id.* *See* Va. Code Ann. § 19.2-264.4.

[4] *Id.*

convictions and death sentences,[5] and the Supreme Court of the United States denied certiorari.[6]

The trial court appointed qualified habeas counsel,[7] and the Supreme Court of Virginia liberally permitted Juniper to amend his pleadings. Following his original filing on December 11, 2006, the day the state statute of limitations expired, the Supreme Court accepted amended petitions filed by Juniper's counsel on January 29, 2007, and then again on May 1, 2007. On March 4, 2011, after nearly four years of review, the Supreme Court of Virginia dismissed Juniper's second amended habeas corpus petition.[8] The court denied rehearing on September 16, 2011. On September 23, 2011, Juniper filed his fourth state petition, which he titled "Second Petition for Writ of Habeas Corpus." The Supreme Court dismissed that petition as untimely on October 4, 2011.[9]

After state habeas proceedings, the trial court set an execution date of November 10, 2011, as required by Virginia Code § 53.1-232.1. Juniper filed in the Supreme Court of the United States an application for a stay and a petition for a writ of certiorari. The Supreme Court denied his stay application on November 9,

---

[5] 626 S.E.2d at 428.

[6] *Juniper v. Virginia*, 549 U.S. 960 (2006).

[7] Va. Code Ann. § 19.2-163.7.

[8] *Juniper v. Warden*, 707 S.E.2d 290 (Va. 2011).

[9] *Juniper v. Warden*, Record No. 111721 (Va. Oct. 4, 2011).

2011,[10] and denied his petition on December 5, 2011.[11] On November 9, 2011, the United State District Court for the Eastern District of Virginia granted Juniper a 90-day pre-petition stay of execution.[12] Juniper filed his federal habeas petition on January 30, 2012.[13]

Juniper subsequently moved the district court to appoint him "unconflicted" counsel[14] to pursue otherwise procedurally claims which might nevertheless be available under *Martinez v. Ryan*.[15] The district court denied Juniper's motion.[16] It denied and dismissed all of Juniper's habeas claims on March 29, 2013.[17] On May 20, 2013, the district court granted Juniper a Certificate of Appealability ("COA") on two issues, including the motion for new counsel.[18]

On June 28, 2013, Juniper moved this Court to expand the COA, which the Warden opposed.[19] Without ruling on Juniper's motion, the Court vacated the

---

[10] *Juniper v. Kelly*, 132 S. Ct. 572 (2011).

[11] *Juniper v. Kelly*, 132 S. Ct. 822 (2011).

[12] JA 4 (D. Ct. ECF No. 8).

[13] JA 983.

[14] *Juniper v. Davis*, 737 F.3d 288, 290 (4th Cir. 2013).

[15] *Martinez v. Ryan*, 566 U.S. 1 (2012).

[16] *Juniper v. Davis*, 737 F.3d at 290.

[17] JA 1282

[18] JA 1283.

[19] Case No. 13-7, ECF Nos. 6 and 14.

district court's decision "with respect only to the appointment of independent counsel," and remanded the case "for further proceedings in accordance with this order."[20]

The district court appointed two new independent counsel for Juniper, who filed an amended habeas petition and supplemental appendix on September 8, 2014. The amended petition asserted three new claims, numbered VI through VIII.[21] The district court dismissed Juniper's amended petition on August 3, 2015, and denied him a COA.[22] On February 2, 2016, the district court denied Juniper's motion to alter or amend its judgment.[23] Juniper timely filed his notice of appeal[24] and moved this Court for a COA.[25] By order dated December 22, 2016, the Court granted Juniper's motions for a COA on three issues additional issues.[26] Because the issue granted in the first COA concerning independent counsel was resolved by this Court's 2013 remand order, four issues remain for appeal.

---

[20] *Juniper v. Davis*, 737 F.3d at 290.

[21] JA 1334.

[22] JA 1486

[23] JA 1503-04.

[24] JA 1505.

[25] Case No. 16-2, ECF No. 23.

[26] Case No. 13-7, ECF No. 63.

Juniper's independent counsel later moved for leave to file a separate opening brief.[27] On February 15, 2017, this Court authorized separate briefs, provided their combined length did not exceed the length limitations established for principal briefs.[28] Juniper filed compliant opening briefs on April 2, 2017.[29]

## II. Facts of Juniper's Crimes

The Supreme Court of Virginia found the facts of Juniper's crimes as follows:

> On the afternoon of January 16, 2004, Keshia Stephens, her younger brother Rueben Harrison, III, and two of Keshia's daughters, Nykia Stephens and Shearyia Stephens, were killed in Keshia's apartment in the City of Norfolk. When police arrived, they found that the door to Keshia's apartment had been forcibly opened. All four victims were discovered in the master bedroom; each had died as a result of gunshot wounds.
>
> Keshia was stabbed through her abdomen, shot three times, and grazed by a fourth bullet. One bullet went through her intestine, kidney, and spine, causing spinal shock and leg paralysis. Another bullet also passed through her intestines and then proceeded to her abdominal aorta and inferior vena cava, causing extensive bleeding.
>
> The stab wound did not fatally wound Keshia, but tore through the muscle of her abdominal wall. There was a great deal of blood accompanying the wound, however, which led the medical examiner performing the autopsy to conclude that the stab wound was probably the first injury inflicted on Keshia. The stab wound was consistent

[27] Case No. 13-7, ECF No. 69.

[28] Case No. 13-7, ECF No. 75 (citing Fed. R. App. P. 32(a)(7)).

[29] Case No. 13-7, ECF No. 86 (addressing Claims I and V(G)) and ECF No. 82 (Claims VI and VII). The Warden will cite to each brief by its ECF number.

> with a wound that would have been caused by the knife blade found at the scene of the crime.[30]

The Virginia Supreme Court also found that "two-year old Shearyia was shot four times while in her mother's arms." "Rueben Harrison was shot three times," and "the broken bones would have caused excruciating pain and immediately disabled Rueben." It also found that "[f]our-year old Nykia was shot one time behind her left ear," and "[h]er body was found lying on top of her uncle's body."[31]

> Evidence presented at trial showed that Juniper and Keshia had been involved in an on-again, off-again tumultuous relationship for approximately two years. On the morning of the shootings, Juniper telephoned his friend, Renee Rashid, from his mother's house where he was living at the time. Juniper asked Rashid to drive him to Keshia's apartment so that he could retrieve some of his belongings. A short time later Rashid picked up Juniper at his mother's house and drove him to Keshia's apartment.
>
> Both Juniper and Rashid entered Keshia's apartment, which was on the second floor of the apartment building. Rashid saw four individuals in the apartment: Keshia, Rueben, who was asleep on the couch, and two of Keshia's children, Nykia and Shearyia, who were preparing to take a bath. After helping Juniper disconnect a DVD player, Rashid was talking to the two girls, but overheard Juniper and Keshia arguing in another room. Keshia repeatedly made comments such as, "There's nobody but you. I told you I'm not seeing anybody but you."
>
> After Rashid announced that she was leaving, Juniper followed her to the door of the apartment. Hearing the door shut, Rashid assumed

---

[30] *Juniper*, 626 S.E.2d at 393-96 (footnotes 3 and 4 omitted). The district court found that the record "fully supports the Supreme Court of Virginia's factual recitation." JA 1209. Juniper did not appeal that finding.

[31] *Id.* at 394.

Juniper was behind her as she began to descend the apartment building steps. But as she was going down the stairway outside Keshia's apartment, Rashid heard a "loud boom" that she described as "sounding like the door being kicked in." Not stopping to look behind her, Rashid hurried to her car. While waiting in her car outside the apartment, Rashid heard Keshia crying and repeating her statement that she was not seeing anyone but Juniper. Rashid sounded her horn to alert Juniper that she wanted to leave. Juniper yelled at Rashid to "Go ahead" so she began to drive away. As she drove away from the apartment she heard four "booms," which she described as "sounding like gunshots."

Rashid did not stop, but proceeded to Juniper's mother's house, and expressed her concern that Juniper had remained at Keshia's apartment. Juniper's friend, Keon Murray, was there when Rashid arrived. Juniper called his mother's house and Murray talked to him on the telephone. Murray observed that Juniper was calling from Keshia's apartment because the Caller ID number matched Keshia's telephone number. Juniper told Murray that "They gone," and that Keshia's apartment was surrounded. He also stated that he "killed them," although he did not name particular individuals.

Murray then called Tyrone Mings, a friend who lived near Keshia's apartment building, and asked him to check Keshia's apartment. Mings walked to the apartment and observed that the front door appeared to have been kicked in. Upon entering Keshia's apartment, Mings testified that he saw Juniper standing in the living room with a white substance on his face and holding an automatic pistol. When Mings asked Juniper about Keshia, Juniper directed Mings to the back of the apartment. Upon entering the master bedroom, Mings saw Rueben and a young girl lying on the bed. Mings did not see Keshia and asked Juniper where she was. Juniper told Mings she was "between the bed and the dresser." Mings returned to the bedroom and called to the people in the room, but no one answered. Mings departed Keshia's apartment, leaving Juniper in the living room, still holding the pistol. Upon returning to his apartment, Mings called the police.

In the meantime, Rashid and Murray picked up Juniper's cousin ("Little John") and drove to Keshia's apartment. Murray and Little John went to look for Juniper, while Rashid stayed in the car. They

returned to the car with Juniper, who sat in the front passenger seat next to Rashid, the driver. Rashid described Juniper as being "jittery" and "breathing real hard." Juniper kept looking in the mirrors, saying, "they're behind us" throughout the car ride. Murray stated that Juniper "looked nervous," "like he was in shock," and that he had a powdery substance like cocaine on his face. Juniper held a black and chrome automatic pistol in his right hand, resting on his lap.

The police first arrived at Keshia's apartment complex at 12:50 p.m., after receiving a telephone call reporting possible gunshots. The responding officer walked around the apartment building and spoke with two residents, but did not go up the stairway to Keshia's apartment. After conferring with a second police officer who had arrived on scene, both officers left the apartment complex believing the call to have been a false report.

Mings observed the officers leave and called the police a second time. Near 2:20 p.m. police officers again arrived at the apartment complex and this time went up the stairway to Keshia's apartment. Officer W. G. Snyder testified the "whole center part of the door was completely knocked . . . inward into the apartment, and wooden debris from the door was lying inside the apartment." The officers entered the apartment, and observed Nykia's body lying across Rueben on the bed in the master bedroom. They then observed Shearyia's body lying across Keshia's body on the floor beside the bed. The officers received no response from any of them.

Police investigators recovered a cigarette butt from the floor by the front door of Keshia's apartment. From the master bedroom where the bodies were located, investigators recovered a knife blade, a knife handle, and shell casings. Shell casings were also found in a bathroom adjoining the master bedroom.

A firearm and toolmark examinations expert testified that bullet casings found in the apartment and the bullets recovered from the victims' bodies were fired from a single nine-millimeter, Luger semi-automatic pistol.[5] The expert also analyzed the recovered knife blade and knife handle and determined that the blade and handle were originally joined.

> [5] The firearm was never recovered.
>
> A latent fingerprint expert testified a fingerprint found on the knife blade had "a minimum of 23 matching characteristics" to Juniper's right thumbprint. In addition, an expert in forensic serology and DNA analysis testified that Juniper's DNA profile matched DNA from the knife handle[6] and the cigarette butt.[7]
>
> > [6] Sixteen loci from the knife handle matched Juniper's DNA profile. The DNA expert testified that Juniper could not be excluded as the source of the DNA, with the odds of another individual having a matching DNA profile being one in greater than six billion individuals, the population of the world.
> >
> > [7] Fifteen loci matched Juniper's profile from the DNA on the cigarette butt; again, the DNA expert testified that Juniper could not be excluded as the source of the DNA, with the odds of another individual having a matching DNA profile being one in greater than six billion individuals.
>
> The police obtained warrants for Juniper's arrest and he surrendered voluntarily on January 26, 2005. While incarcerated at the Hampton Roads Regional Jail awaiting trial, Juniper admitted to a fellow inmate, Ernest Smith, that he committed the murders. Smith testified that while the two were together in the medical pod at the Hampton Roads Regional Jail, Juniper confessed to shooting the four victims. Smith testified that Juniper told him that he had killed the children because "he didn't want to leave any witnesses at the scene of the crime."[32]

During the sentencing phase of trial, the prosecution introduced Juniper's criminal record and "also introduced evidence of Juniper's violent behavior and unadjudicated criminal conduct," including testimony from multiple witnesses

[32] *Id.* at 394-96.

"about Juniper's tumultuous and abusive relationship with Keshia."[33] Other witnesses testified to Juniper's violent conduct while he was incarcerated.[34]

In mitigation, Juniper presented evidence of his difficult childhood and testimony "about Juniper's generosity and caring relationship with several young children."[35] He also presented expert testimony from Dr. Thomas Pasquale, a clinical psychologist. Dr. Pasquale explained why Juniper would have felt "abandoned," had "difficulty trusting people" and concluded that "if you're not in control, then you're likely to be harmed."[36] Dr. Pasquale also testified that Juniper had "features of a characterological dysfunction, personality disorder which demonstrated a failure to adapt [and] develop."[37] "Dr. Pasquale diagnosed Juniper with depression, alcohol, cocaine and marijuana dependence, and antisocial personality disorder."[38]

## STANDARDS OF REVIEW

A district court's decision whether to grant federal habeas relief to a state prisoner is reviewed *de novo* and under the standards set forth in 28 U.S.C.

---

33 *Id.* at 396-97.

34 *Id.* at 397.

35 *Id.* .

36 *Id.* at 397-98.

37 *Id.* at 395.

38 *Id.* at 398.

§ 2254.[39] This Court reviews "the district court's legal conclusions *de novo* and its findings of fact for clear error."[40]

The Antiterrorism and Effective Death Penalty Act (AEDPA) mandates that state court factual findings are presumed correct and may be rebutted only by clear and convincing evidence.[41] Facts found by the Virginia Supreme Court enjoy the same presumption.[42] So even when a district court considers a claim de novo, it still must "apply § 2254(e)(1) to any factual findings made by the state court."[43] The same rule applies to allegations which a petitioner argues might excuse his default and avoid the procedural bar.[44]

## SUMMARY OF ARGUMENT

None of Juniper's appealed claims was presented to the state habeas court. The district carefully considered the excuses offered to overcome the procedural

---

39 *Muhammad v. Kelly*, 575 F.3d 359, 367 (4th Cir. 2009) (citing *Bell v. Ozmint*, 332 F.3d 229, 233 (4th Cir. 2003)).

40 *Walker v. Kelly*, 589 F.3d 127, 140 (4th Cir. 2009).

41 28 U.S.C. § 2254(e)(1); *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007).

42 *See Sumner v. Mata*, 449 U.S. 539, 541-49 (1981).

43 *Winston v. Kelly*, 592 F.3d 535, 553 (4th Cir. 2010); *Sharpe v. Bell*, 593 F.3d 372, 379 (4th Cir. 2010) ("there is no reason for a 'do-over' in federal court when it comes to facts already resolved by state tribunals").

44 *Teleguz v. Pearson*, 689 F.3d 322, 332 (4th Cir. 2012) ("the district court may not reject the factual findings of a state court absent clear error.") (citing *Sharpe v. Bell*, 593 F.3d at 379).

defaults, and correctly determined they did not apply. Federal habeas relief for each claim therefore is barred.

Juniper ignores the default of his *Brady* claim, but even under the district court's forgiving analysis, he had to show at least that the disputed information was material before he could show cause and prejudice sufficient to excuse his default. Because the contested witness statements were not material, Juniper was not prejudiced, and the district court properly dismissed the defaulted claim.

Juniper alleges he was denied the effective assistance of counsel on appeal when counsel failed to argue that the penalty phase instructions did not specify findings that he now contends are constitutionally required. In the district court, Juniper first denied, then later admitted, that his state habeas counsel failed to present his claim to the state habeas court. Now Juniper reasserts his original argument that his state habeas counsel asserted this claim in state court. But the text of his state habeas pleading does not support his argument, or gainsay his later concession. The district court properly dismissed the claim as procedurally barred.

Juniper contends his defaulted claims VI and VII fall within the "narrow" equitable exception *Martinez v. Ryan* created. The district court properly found the claims were not "substantial" under *Martinez* because they were without merit. The district court therefore properly dismissed both Juniper's defaulted *Batson* claim and his defaulted expert witness claim as procedurally barred.

## ARGUMENT

### I. The district court properly dismissed the defaulted *Brady* claim because the information was not material. (Claim I)

Juniper argues that the prosecution concealed statements that two of Keshia Stephens's neighbors, Wendy and Jason Roberts, made to police. The district court found that Juniper failed to present this claim to the state courts.[45] Because Juniper failed properly to exhaust the claim,[46] and also failed to establish a sufficient excuse for his default, the district court properly dismissed the claim as procedurally barred.[47]

Juniper's argument focuses on information included in a one-page typed summary by Norfolk Police Detective D. I. Jones, which he calls the "Jones Summary."[48] Juniper asserts that the summary could have contradicted the sequence of events testified to at trial.[49] Juniper does not acknowledge that his claim is defaulted and argues no excuse to overcome the default. But because Juniper failed to show that he had properly exhausted this claim, the district court

---

[45] JA 1227.

[46] 28 U.S.C. § 2254(b)(1)(a); *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) ("we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies").

[47] JA 1235.

[48] ECF No. 86 at 9.

[49] *Id.* at 11.

properly addressed the threshold question of whether Juniper had established sufficient cause and prejudice to excuse his default.

In conducting the threshold cause-and-prejudice inquiry, the district court reasoned that if the prosecution had concealed exculpatory evidence, that circumstance could constitute cause. It held that the standard for prejudice, "in this context, is the same as the materiality showing on the merits."[50]

### A. Claims alleging violations of a prosecutor's due process obligations must establish that the information at issue is material.

Under *Brady v. Maryland*,[51] "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."[52]

> There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, . . . either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.[53]

---

[50] JA 1227.

[51] 373 U.S. 83 (1963) .

[52] 373 U.S. at 87.

[53] *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."[54] The court must assess the totality of the evidence, including all the evidence presented at trial, in determining whether the information allegedly withheld in violation of *Brady* was material.[55] The burden of proving a *Brady* claims rests entirely upon the petitioner.[56]

**B. The summary notes do not undermine confidence in the verdicts.**

The district court found that Juniper had satisfied the first two prongs of a *Brady* claim. It held that the summary contained three favorable items of information. First, by "suggesting that Keshia Stephens was still alive around 12:30 or 12:45 p.m.,"[57] the notes "contradict the prosecution's theory of the murders."[58] Second, because Wendy Roberts said that Keshia Stephens had a confrontation with a man who "bore little physical similarity" to Juniper,[59] the summary raised "the possibility that someone other than the petitioner may have been angry with Stephens, and even threatened her not to stay on the premises any

---

[54] *United States v. Bagley*, 473 U.S. 667, 682 (1985).

[55] *Id.* at 683.

[56] *Walker*, 589 F.3d at 140.

[57] JA 1228.

[58] *Id.*

[59] JA 1229.

longer, just hours before someone killed her."[60] Third, Wendy Roberts saw an array of six photographs, including Juniper's, but she selected someone other than Juniper as the man she saw arguing with Keshia Stephens.[61] The district court also concluded that the prosecution had concealed the information because the record did not establish that the information had been disclosed.[62]

Nonetheless, the district court recognized that there is a "crucial distinction between *exculpatory* evidence and *material* evidence for *Brady* purposes."[63] Despite holding that "the Roberts' statements and photo identification are exculpatory," the district court ultimately found that "they lack materiality, and the prosecution's concealment therefore did not prejudice the outcome of the petitioner's case."[64]

Ignoring the district court's careful distinction, Juniper asserts that the same three points of information were material, equating the reasons the district court

---

[60] *Id.*

[61] *Id.*

[62] *Id.*

[63] JA 1234; *see also Strickler*, 527 U.S. at 281 ("strictly speaking, there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict").

[64] JA 1234.

determined the information was favorable with materiality.[65]

Juniper does delve into the district court's first exculpatory finding to argue that Wendy Roberts's report of seeing Keshia Stevens alive would specifically have impeached the times testified to by Murray, Rashid, and Mings.[66] But he then assumes that, because each of those three witnesses already had been impeached in other ways, simply presenting a witness with a different recollection of the time would discredit the entire account of each witness.[67] Juniper fails to address the weight the summary's conflicting account would be due in light of all the other evidence at trial.

The district court carefully weighed all the evidence. "Ultimately, all of the Roberts' statements bear on prosecution witnesses' credibility, but they cannot unsettle certain basic facts about the murders."[68] "Nothing the Roberts could say would affect the probative value of the powerful forensic evidence against Juniper."[69] The district court specified that "investigators discovered his DNA and fingerprint on the blade of the knife with which Keshia Stephens was stabbed

---

65 ECF No. 86 at 11.

66 *Id.* at 12.

67 *Id.* at 12-13.

68 JA 1232.

69 JA 1233.

before being shot, and on a cigarette butt found at the scene of the crime."[70]

Juniper argues that the forensic evidence is "merely circumstantial," and that it should be "unsurprising" that he would leave his DNA in an apartment he "frequented."[71] But the district court considered, and reasonably rejected, that very argument.

> The petitioner would have the Court believe that his fingerprint remained perfectly intact on the knife blade because of his regular visits to Stephens' apartment. Thus, the Court would have to imagine another assailant coming to the apartment, using the knife to inflict deep stab wounds on Stephens, and yet managing not to disrupt the petitioner's fingerprint on the knife's *blade* – a location where a person preparing food does not normally place his or her fingers, and a piece of the object which is normally cleaned after each usage. Even accepting the petitioner's arguments about what the Roberts saw and heard, his contentions regarding how this physical evidence ended up on one of the murder weapons strain credulity.[72]

Juniper also dismisses the significance of his DNA on the cigarette butt found near the front door.[73] Juniper fails to address the undisputed evidence that the cigarette butt on the floor was on top of the debris of the kicked-in front door.[74] The only reasonable conclusion had been left there after the door had been broken in.

---

[70] *Id.*

[71] ECF 86 at 13.

[72] JA 1233.

[73] ECF 86 at 13.

[74] *See* Juniper's State Habeas Appendix (hereafter "SHA") 1283 ("a cigarette butt laying on this piece of particle board here"); SHA 1285 ("the lock right here, the parts of the door, pieces of the particle board, and right here lies the cigarette

The district court also found that "Juniper's conduct and statements after the killings are additional strong evidence of his guilt."[75] "Hence, the favorable evidence cannot 'reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'"[76]

The district court also found that the "undisputed phone records" established "that the first 911 call was registered at 12:44:27 p.m.," when "the caller complained of gunshots about an hour earlier at 1427 Kingston Ave, Apt B."[77] The district court found that the summary – even when considered together with other post-trial affidavits – did not undermine confidence in the verdict.

> [T]he problem for the petitioner is that several witnesses testifying to gunshots fired after 1:00 p.m. cannot unsettle the fact that the first 911 call took place at 12:44 p.m. any more than a lone witness can achieve that end. In order to believe that the murders continued to occur until 1:30 p.m., one would have to believe either that the killer(s) strung them out over nearly two hours or that someone planted a fake 911 call prior to the killings in order to create confusion about the murder timeline. One would have to maintain these notions, more

---

butt"); SHA 137) ("It's a cigarette butt, and it was right on that front door that I showed you earlier there was."); SHA 1695 (expert testimony that Juniper could not be excluded from DNA from the cigarette butt at the door); SHA 2676 ("Request for Laboratory Examination," matching respective item numbers). Because pages 1-2801 of the SHA reproduce the entire state direct appeal joint appendix, in page order, the Warden for clarity refers only to the SHA pagination.

[75] JA 1233.

[76] *Id.* (quoting *Banks v. Dretke*, 540 U.S. 668, 698 (2004)) (internal quotation marks omitted).

[77] JA 1233.

> importantly, over the word of people who claim to have seen the petitioner either at or leaving the crime scene with a gun.[78]

Juniper argues that the district court's findings do not sufficiently account for "exculpatory" forensic evidence: that his fingerprints were not found on certain ammunition and that his DNA was not found on a cigarette butt in an ashtray in the bedroom.[79] But the most that evidence showed was that he did not leave fingerprints on bullets not used in the murder and that, at some unknown time, someone else put his or her cigarette butt in an ashtray.

Juniper complains that the district court "explicitly gave the prosecution the benefit of the doubt and only considered" the summary, and not the post-trial affidavits from the Roberts.[80] Juniper misreads the opinion. The passages Juniper cites made only the unremarkable finding that neither the district court "nor any other disinterested party has any idea what the Roberts actually said to police back in 2004 because the police made no verifiable, contemporaneous record of their statements, subject to the Roberts' own affirmation."[81] The only "assumption" – made in deciding that the information was "unmistakably favorable" to Juniper[82] –

---

[78] *Id.*

[79] ECF No. 86 at 13-14.

[80] *Id.* at 14-15 (citing JA 1227-28).

[81] JA 1227-28.

[82] JA 1228.

was that Detective Jones's notes were accurate.[83] Most importantly, in assessing materiality, the district court expressly accepted the account stated in the affidavits *over* the information in the summary.[84] The district court simply did not find either account from the Roberts was material.

Wendy Roberts's affidavit asserts that the events happened between 1:00 and 2:30 p.m. – the Commonwealth's evidence was that the police received a report of gunshots fired at an apartment on Kingston Avenue and police responded to the call at 12:50 p.m. but did not enter the apartment,[85] and that there was a second police response at 2:20 p.m.[86] Thus the affidavits do not, as Juniper argues, establish that the murders occurred 5 minutes before the second police response to the scene.[87]

Nor is it material that shortly after Wendy and Jason Roberts heard a series of loud pops, which Wendy Roberts described as a "backfire" rather than gunshots, they saw an unknown man exit Keshia Stephens's apartment building and drive away. The affidavits do not identify another suspect. The observation does not disprove that Keon Murray went to Keshia Stephens's apartment, found Juniper

---

[83] *Id.*

[84] JA 1234 n.11.

[85] 626 S.E.2d at 379; JA 1234.

[86] 626 S.E.2d at 379.

[87] ECF No. 86 at 17.

standing in the living room with a gun in his hand and a white substance on his face,[88] or that Juniper fled the scene in a different car, driven by Renee Rashid.[89]

Likewise, information that Juniper was not picked from a photographic lineup by a stranger who saw a man from a distance does not invalidate the DNA evidence, the testimony of witnesses who knew Juniper well, or his confessions. Wendy Roberts is white;[90] her cross-racial identification of an African-American man may have been challenged as unreliable.[91]

Finally, Juniper speculates that the summary might have led his trial counsel to discover information that the prosecution "coordinated" witness testimony.[92] Not only does Juniper's vague reference to "coordinated" testimony stop short of accusing the prosecution of any actual impropriety, he also fails to show that any such information exists. Juniper's speculation does not establish a reasonable

---

[88] 626 S.E.2d at 395.

[89] *Id.*

[90] JA 1161.

[91] *See*, *e.g.*, *Young v. Conway*, 698 F.3d 69, 81 (2d Cir. 2012) ("[S]ocial science research indicates that people are significantly more prone to identification errors when trying to identify someone of a different race, a phenomenon known as 'own-race bias.' . . . Studies suggest that own-race bias is especially pronounced where, as here, the person making the identification is Caucasian and the person being identified is African-American.")

[92] ECF No. 86 at 19.

probability of a different result in light of the DNA evidence and the testimonies of Murray, Mings, and Rashid.

Juniper thus failed to show that the information was material, and so no cause and prejudice excused his default. The district court properly dismissed the *Brady* claim as procedurally barred and on the merits.[93]

## II. The district court properly dismissed Juniper's unexhausted claim that he was denied the effective assistance of counsel on appeal. (Claim V(G))

Juniper alleged in his Claim V(G) that his appellate counsel were ineffective for failing to brief the additional argument that the penalty phase instruction given to his jury was unconstitutional under *Apprendi v. New Jersey*[94] and *Ring v. Arizona*.[95] The district court held that Juniper had not fairly presented the claim to the Virginia Supreme Court because his state habeas petition "buried" the claim within a claim that alleged that his *trial* counsel were ineffective.[96] The district court found that the claim would fail on the merits because Juniper could not show prejudice.

---

[93] JA 1235; *see also Strickler*, 527 U.S. at 281.

[94] 530 U.S. 466 (2000).

[95] 536 U.S. 584 (2002).

[96] JA 1479.

The deferential standard announced in *Strickland v. Washington*[97] governs ineffective assistance of counsel claims. The petitioner bears the burden of showing that his trial counsel's performance was deficient in that it fell below an objective standard of reasonableness, *and* that the grossly deficient performance actually prejudiced the defense.[98] The *Strickland* standard is "highly demanding."[99] Because ineffective counsel claims are "all too commonplace," the standard applies "a heavy measure of deference" to counsel's decisions.[100] *Strickland* establishes that trial counsel are "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."[101]

*Strickland*'s "performance" inquiry requires a showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."[102] Courts' must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

[97] 466 U.S. 668 (1984).

[98] *Id.* at 687.

[99] *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

[100] *Bunch v. Thompson*, 949 F.2d 1354, 1363 (4th Cir. 1991).

[101] *Strickland*, 466 U.S. at 690.

[102] *Id.* at 687; *Harrington v. Richter*, 562 U.S. 86, 104 (2011).

professional assistance," which requires that the claim be rejected if the conduct *might* have been the result of trial tactics or strategy.[103]

*Strickland*'s "prejudice" inquiry requires proof that there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[104] A reasonable probability is a "probability sufficient to undermine confidence in the outcome."[105] Counsel's errors, even if unreasonable, must be shown to have "actually had an adverse effect on the defense."[106] "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'"[107]

Finally, a court need not decide both prongs to dismiss a *Strickland* claim. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." [108]

---

[103] *Id.* at 689; *Darden v. Wainwright*, 477 U.S. 168, 186 (1986); *Bunch*, 949 F.2d at 1363.

[104] *Id.* at 694.

[105] *Id.*

[106] *Id.* at 693.

[107] *Richter*, 562 U.S. at 112.

[108] *Id.* at 697.

Juniper argues that the district court erred on the procedural question, but he does not argue any grounds to excuse the default,[109] and he now has changed his position on the exhaustion question twice. Juniper initially contended that he had presented the claim to the Supreme Court of Virginia.[110]

After this Court had remanded the case, however, Juniper "changed his tune"[111] and agreed that he had failed to present this claim of ineffective assistance of appellate counsel to the state courts.[112] As the district court found, Juniper re-packaged his original claim as a *Martinez* claim, Claim VIII in his Amended Petition.[113]

In particular, Juniper's Claim VIII argued that his state habeas counsel were ineffective in describing the nature of his claim. Now that the district court has rejected that claim,[114] Juniper resurrects his original argument that he actually did raise the claim in state court. Juniper argues that the district court improperly

[109] ECF No. 86 at 27-28.

[110] JA 1083.

[111] *Cf. Teleguz v. Zook*, 806 F.3d 803, 806 (4th Cir. 2015), *cert. denied*, 137 S. Ct. 95 (2016) (noting change in litigation position following this Court's remand).

[112] JA 1379.

[113] JA 1480.

[114] JA 1481, 1485. Juniper did not seek a COA to appeal the dismissal. *See* Case No. 13-7, ECF No. 55-1 (moving for COA for Claims VI and VII only).

focused on the title of his state habeas claim to hold that it asserted only ineffective assistance of trial counsel.[115]

Juniper's argument is unavailing for several reasons. First, his concession in the district court that the claim was defaulted is binding on him. Second, the record demonstrates that the district court closely examined the body of the state habeas claim,[116] finding that "Part IV of his state habeas petition was comprised solely of claims about *trial counsel's* allegedly ineffective assistance during the sentencing phase of his case."[117] The district court specifically addressed the single passage Juniper cites to this Court,[118] and found that it had not "fairly presented a claim regarding *appellate counsel's* performance to the Supreme Court of Virginia"[119] because it "lacked the requisite level of clarity to give the Supreme Court of Virginia notice that such a claim was being made."[120] "This is simply not the way that habeas review, at either the state or federal level, is designed to work."[121] Third, it is unnecessary for this Court to resolve the exhaustion question

---

[115] ECF No. 86 at 26.

[116] JA 1279-80.

[117] JA 1279.

[118] ECF No. 86 at 27.

[119] JA 1279 (emphasis original).

[120] JA 1280 (quoting *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994)).

[121] *Id.*

because it has the authority to deny to habeas corpus relief without requiring exhaustion.[122] This is the proper course here because the district court also found the claim utterly lacking in merit: the state habeas court found that the instructions and verdict forms in Juniper's case were not defective.[123] Thus, Juniper cannot establish *Strickland* prejudice.

In dismissing a related *Strickland* claim regarding Juniper's trial counsel, the Supreme Court of Virginia held that "the jury was properly instructed and that the verdict forms gave the jury the option to find either or both aggravating factors beyond a reasonable doubt."[124] In light of that ruling, the district court concluded that Juniper could not show prejudice because "there is no reason to believe that a direct appeal on the same issue – also, in the final instance, to the Supreme Court of Virginia – would have led to a different outcome."[125]

Juniper argues now as though the Virginia Supreme Court did not understand Virginia precedent on these state-law, verdict-form issues; he contends that its own precedent showed that the forms and instructions were erroneous.[126]

---

[122] 28 U.S.C. § 2254 (b)(2).

[123] JA 1281 n.33.

[124] *Juniper*, 707 S.E.2d at 309 (citing *Prieto v. Commonwealth*, 278 Va. 366, 406, 682 S.E.2d 910, 931 (2009)) .

[125] JA 1281 n.33.

[126] ECF No. 86 at 30.

But that argument – that the Virginia Supreme Court was wrong about its own law on the correctness of the verdict forms and instructions - can state no ground for relief in a federal court.[127]

Juniper relies heavily on *Prieto v. Commonwealth*,[128] which the Virginia Supreme Court decided two years *after* Juniper's direct appeal. Juniper references *Prieto*'s holding that, as a matter of state law, "one or both of the aggravating factors must be found beyond a reasonable doubt by a jury before a death sentence may be imposed."[129] But at the time of Juniper's trial, state case law had no express requirement that a jury be unanimous as to the particular aggravating factor.[130] Before *Prieto*, the federal courts also recognized that Virginia required only that the jury be unanimous in its ultimate finding that the defendant was death eligible.[131]

---

[127] *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*) ("Federal habeas corpus relief does not lie for errors of state law."); *Wright v. Angelone*, 151 F.3d 151, 158 (4th Cir. 1998) ("Matters of state law not involving federal constitutional issues are not appropriate grounds for federal habeas corpus relief.").

[128] 682 S.E.2d 910 (Va. 2009).

[129] *Prieto*, 682 S.E.2d at 935.

[130] *Hoke v. Commonwealth*, 377 S.E.2d 595, 602 (Va. 1989).

[131] *Briley v. Bass*, 584 F. Supp. 807, 819 (E.D. Va.) ("jury's verdict is not required to be unanimous as to the aggravating factors relied upon"), *aff'd*, 750 F.2d 1238 (4th Cir. 1984).

Juniper argues that because Prieto prevailed on the argument that "vileness" and "future dangerousness" are separate elements for purposes of *Ring*, Juniper's own counsel were ineffective for failing to anticipate that the argument would succeed.[132] That is wrong. In fact, an attorney's failure to anticipate a new rule of law is not constitutionally deficient – even when the existing rule is under attack in the United States Supreme Court at the time of trial.[133]

Moreover, the sentencing verdict forms reflected that Juniper's jury unanimously agreed that *both* aggravating factors had been proven beyond a reasonable doubt with respect to each of the four death sentences.[134] Each juror affirmed that the forms reflected his or her verdict.[135] There was no basis upon which counsel were required to object.[136] Indeed, *Prieto* specifically affirmed the

---

[132] ECF No. 86 at 23-24.

[133] *See, e.g.*, *United States v. McNamara*, 74 F.3d 514, 516-17 (4th Cir. 1996) (holding trial counsel was not ineffective for not interposing an objection not supported by the controlling precedent at the time of trial); *Honeycutt v. Mahoney*, 698 F.2d 213, 217 (4th Cir. 1983) (holding that defendant's trial counsel was not ineffective for failing to interpose objections to jury instructions that were supported by existing controlling precedent).

[134] JA 518, 536, 545, and 554; *see also* JA 1482 ("The forms for Nykia omitted the portion of 'vileness' defined as 'aggravated battery to the victim beyond the minimum necessary to accomplish the act of murder,' because she had been shot only once. In all other respects, the forms were identical.").

[135] JA 511-12.

[136] *Hoke*, 377 S.E.2d at 602-03.

sufficiency of verdicts unanimously finding both factors,[137] even after each factor is held to be a separate element for purposes of *Ring*.

In sum, the underlying claim was without merit and the district court properly dismissed Juniper's defaulted claim as procedurally barred.[138]

### III. Juniper's defaulted claim that his trial counsel were ineffective in arguing that the prosecutor violated *Batson v. Kentucky* was not substantial under *Martinez*. (Claim VI)

Juniper alleged that his trial counsel were ineffective for failing to rebut the prosecutor's race-neutral reasons for his peremptory strike of Charlotte McClain – a black member of the venire panel.[139] The claim was not presented to the state habeas court. The district court held that the defaulted claim was not substantial, so the procedural bar was not excused under *Martinez*.[140] Juniper argued no other excuse.

Claims that never were presented to the state court generally are foreclosed from review in federal court.[141] A claim found defaulted by the Virginia Supreme Court, or never properly presented to the Virginia Supreme Court, is both exhausted

---

[137] 682 S.E.2d at 935 (distinguishing *Hoke*).

[138] JA 1281.

[139] ECF No. 82 at 8.

[140] JA 1469.

[141] *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Fisher v. Angelone*, 163 F.3d 835, 851-52 (4th Cir. 1998).

and procedurally barred.[142] Under § 2254(b)(2), the federal courts may *deny* (but not grant) relief, even if a particular claim is unexhausted. A federal habeas court can excuse such a default and reach the merits of the defaulted claim only if the prisoner can show "cause" for his failure to comply with state rules and "prejudice" from a violation of federal law.[143] Under *Coleman v. Thompson*, errors by counsel in the post-conviction proceedings did not supply "cause" to excuse such a procedural default.[144] *Martinez* created a narrow equitable exception to *Coleman*.[145]

As this Court has explained, "*Martinez* claims may be reviewed only if, among other things, 'the ineffective-assistance-of-trial-counsel claim is a substantial one,' and the cause behind the default was 'no counsel or only ineffective counsel' during the collateral review proceedings."[146] To show

---

[142] *Gray*, 518 U.S. at 162; *see also O'Sullivan v. Boerckel*, 526 U.S. at 848.

[143] *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). As acknowledged by the district court, default also can be excused "if the petitioner can 'demonstrate that failure to consider the federal claim will result in a "fundamental miscarriage of justice."'" JA 1450 (quoting *Coleman*, 501 U.S. at 750). The district court accurately found, however, that "Juniper's Amended Petition sets forth only *Martinez* claims, which fit into the 'cause and prejudice' framework of *Coleman*." *Id.*

[144] 501 U.S. at 754.

[145] 566 U.S. at 14.

[146] *Teleguz v. Zook*, 806 F.3d at 815 (quoting *Fowler v. Joyner*, 753 F.3d 446, 461 (4th Cir. 2014), *cert. denied*, 135 S. Ct. 1530 (2015)).

ineffective assistance by state habeas counsel "the petitioner must make a 'substantial' showing with respect to both counsel's competency (first-prong *Strickland*) and prejudice (second-prong *Strickland*)."[147] He must "establish that both (a) post-conviction counsel's performance was deficient, and (b) there was a reasonable probability that, absent the deficient performance, the result of the post-conviction proceedings would have been different."[148] The "substantial" showing requires that the petitioner "must demonstrate that the claim has some merit."[149]

After analyzing the interrelated findings required under *Martinez*, the district court determined that the "most efficient" course would be to conduct "a preliminary merits review of each ineffective-assistance-of-trial-counsel claim."[150] "If an underlying trial-ineffectiveness claim has no merit, then it fails not only under *Martinez's* first element, but also the second element, because state-habeas counsel could not have been ineffective for failing to raise a meritless claim."[151]

---

[147] *Id.* (quoting Means, FEDERAL HABEAS MANUAL § 9B:62 (2016) (citing *Clabourne v. Ryan*, 745 F.3d 362, 376 (9th Cir. 2014))).

[148] *Clabourne*, 745 F.3d at 376.

[149] *Martinez*, 566 U.S. at 14 (citing *Miller-El* v. *Cockrell*, 537 U. S. 322 (2003)).

[150] JA 1454.

[151] *Id.*

"If the underlying claim has some merit," then the district court would have to decide whether habeas counsel were ineffective.[152]

Supreme Court precedent in the analogous context of appellate representation makes clear that counsel are not constitutionally obligated to raise every conceivable claim.[153] "Winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."[154] The same can and should be said of counsel representing petitioners in habeas corpus.

Juniper argues that his trial counsel should have established the prosecutor's "disparate treatment" in not striking Gerald Hackworth, a member of the panel whom Juniper asserts was white and "similarly situated" to McClain.[155] Juniper alleged that if his trial counsel had argued this "disparate treatment," he would have succeeded in showing that striking McClain violated *Batson*.[156] Juniper's

---

[152] *Id.*

[153] *Jones v. Barnes*, 463 U.S. 745 (1983) (counsel cannot be found ineffective for failing to raise every non-frivolous issue identified by a defendant); *Evitts v. Lucey*, 469 U.S. 387, 394 (1985) (counsel "must play the role of an active advocate.").

[154] *Smith v. Murray*, 477 U.S. 527, 536 (1986) (citation and internal quotation marks omitted).

[155] ECF No. 82 at 8-9.

[156] *Id.* at 10.

argument must fail, however, because it disregards binding factual finding by the state court.[157]

### A. Juniper failed to establish that the defaulted claim was substantial.

To prevail on a challenge under *Batson v. Kentucky*,[158] a defendant must persuade the court that the prosecutors engaged in intentional discrimination.[159]

> First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.[160]

The trial court rejected Juniper's *Batson* challenge.[161]

In its *Strickland* analysis, the district court held that the first *Batson* inquiry was "moot" because the prosecutor had provided race-neutral reasons for his strikes.[162] Addressing the second *Batson* inquiry, the district court held that Juniper

---

[157] 28 U.S.C. § 2254(e)(1); *Sharpe*, 593 F.3d at 378-79.

[158] 476 U.S. 79 (1986).

[159] *Hernandez v. New York*, 500 U.S. 352, 373 (1991).

[160] *Id.* at 358-59.

[161] *Juniper*, 626 S.E.2d at 413; *see also* JA 1459.

[162] JA 1460 (citing *Hernandez*, 500 U.S. at 373). In *Hernandez*, the trial court failed to rule in any way on the prima facie inquiry, arguably preventing the defendant from carrying his burden. 500 U.S. at 359. The Supreme Court held only that the prosecution's proffer of race-neutral reasons mooted any appellate

had conceded that the prosecutor had provided a race-neutral reason for the strike.[163] The district court therefore focused its analysis on Juniper's allegation that the race-neutral reason was pretextual and that the strike constituted purposeful discrimination.[164]

Juniper argues that under *Miller-El v. Dretke* ("*Miller-El II*"),[165] his trial counsel should have conducted a comparative juror analysis: "If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson's* third step."[166] The district court found that Juniper could not rely on *Miller-El II* to measure his counsel's performance because it post-dated Juniper's trial by five months.[167] Juniper does not

---

objection by the state. *Id.* *Hernandez* did not change the review in what it called "the normal course of proceeding," when, as here, the trial court has ruled on the prima facie case. *Id.* *Followed*, *Buck v. Commonwealth*, 443 S.E.2d 414, 415 (Va. 1994). (court "need not consider" whether the defendant established a prima facie case where the defendant failed to preserve his argument that the race-neutral reasons were pretextual).

[163] JA 1460; *cf.* ECF 82 at 11.

[164] JA 1460.

[165] 545 U.S. 231 (2005).

[166] ECF No. 82 at 13, 16, 17-18.

[167] JA 1461.

address this distinction.[168] Nevertheless, in order to gauge whether the claim was substantial, the district court assumed that counsel's failure to compare McClain and Hackworth was deficient performance, and turned to whether Juniper had shown prejudice from his defaulted *Strickland* claim. "In this regard, he must show a reasonable probability that the trial court would have deemed the prosecutor's basis for striking McClain to be pretext and sustained his *Batson* objection. Juniper fails at this task for several reasons."[169]

The district court rejected Juniper's arguments that the prosecutor's stated reason for striking McClain – her brother's conviction in Norfolk – applied "just as well" to Hackworth, who had himself been convicted in Norfolk. It found that the record established at least three differences: one conviction was much more recent (Hackworth had been convicted seven years earlier; McClain's brother was

[168] Juniper does assert that, "at the time of Juniper's trial, comparative juror analysis was well established in Virginia law. *See, e.g., Broady v. Commonwealth*, 429 S.E.2d 468, 471 (Va. Ct. App. 1993)." ECF 82 at 8. *Broady* did not require the sort of comparative juror analysis sought by Juniper. It required further inquiry into facially neutral reasons that might apply to other jurors where the prosecution "has *only* struck jurors of one race." 429 S.E.2d at 471. The prosecution had "used each of its four strikes to remove black jurors." 429 S.E.2d at 470. In Juniper's case, the prosecution struck four blacks and three whites. 626 S.E.2d at 413. Perhaps because it does not fit the facts in his case, Juniper did not rely on *Broady* below as evidence of deficient performance.

[169] JA 1462.

convicted only a year before Juniper's trial);[170] the nature of McClain's conviction was not known (Hackworth specified that he had been convicted only of a misdemeanor; McClain did not specify);[171] and Hackworth himself was the person convicted, while McClain experienced the conviction of "a loved one."[172] The district court recognized that "seeing a family member go through criminal prosecution or get arrested may leave a grudge or subconscious hostility that does not come with being confronted with one's own wrongdoing."[173]

The district court also found that the prosecutor consistently struck, either for cause or by peremptory, six prospective jurors who had a family member who had been prosecuted.[174] So those who were, in fact, similarly situated were treated the same. The district court also found that the two venire members were not comparable in other ways:

> McClain was single and childless, whereas Hackworth was married to a middle school teacher, who also provided security at her school and served as a neighborhood watch block captain, and had a six-year old daughter. It should be obvious why a prosecutor would want someone like Hackworth on the jury for the trial of a man accused of brutally

---

[170] *Id.*

[171] *Id.*

[172] JA 1463.

[173] *Id.*

[174] *Id.*

> murdering his girlfriend, her younger brother, and her two daughters, ages two and four.[175]

Juniper argues that this Court should reject the district court's finding that McClain and Hackworth were not "similarly situated," asserting that the distinctions it found were not first proffered by the prosecutor.[176] He argues that "reviewing courts may not justify strikes of black jurors with reasons the prosecutor never proffered."[177] But the district court did not supply facially neutral reasons for the strikes; it rejected Juniper's comparative juror analysis because he did not establish the necessary predicate for such an analysis: that the jurors were similarly situated. The record reviewed by the district court established they were not similarly situated, so even if Juniper's trial counsel had pursued a comparative juror challenge, it would have failed to show the prosecutor's stated facially neutral reasons were pretextual. There is no probability of a different result.

Juniper argues that the prosecutor "admitted he saw no difference between McClain and Hackworth."[178] But the prosecutor made that statement only in agreeing that he had no grounds for a strike for cause.[179] A subsequent peremptory

---

[175] JA 1463-64.

[176] ECF No. 82 at 16.

[177] *Id.* (citing *Miller-El II*, 545 U.S. at 252).

[178] ECF No. 82 at 14.

[179] JA 222-23.

strike need not be supported by the same grounds as required for a strike for cause to be proper under *Batson*.[180]

Juniper also claims that the district court "refused to consider all relevant circumstances."[181] But Juniper misapplies the standards for the first *Batson* inquiry, which requires merely a *prima facie* case, to the third *Batson* inquiry, which requires proof of actual, purposeful discrimination.[182] In particular, Juniper asserts that the district court "refused to consider" Juniper's calculation that "the prosecution struck African American venire members at nearly three times the rate of white members" as a "relevant circumstance."[183] But the district court clearly did consider the assertion. It held that, "[e]ven if the Court accepted Juniper's statistical arguments, they still only provide evidence of a prima facie case at the first step, not purposeful discrimination at the third step."[184]

Juniper asserts that *Foster v. Chapman*[185] found "purposeful discrimination" based "in part" on a "strike rate disparity."[186] It did not. *Foster* cites no "strike

---

180 *Batson*, 476 U.S. at 97; *Rice v. Collins*, 546 U.S. 333, 338 (2006).

181 ECF No. 82 at 12, 15.

182 *Cf. Batson*, 476 U.S. at 96–97 (first step determines whether "all relevant circumstances" support "an inference of discrimination"), *and id.* at 98 (third step determines whether defendant has established actual "purposeful discrimination").

183 ECF No. 82 at 12.

184 JA 1461 n.10.

185 136 S. Ct. 1737, 195 L. Ed. 2d 1 (2016).

rate;" its only reference to a number of strikes was its finding that the prosecution "exercised peremptory strikes against all four black prospective jurors qualified to serve."[187] After finding that the state had conceded a prima facie case,[188] *Foster* did not rely further on the number of strikes. Instead, the Supreme Court relied on a comparative juror analysis and identified "the shifting explanations, the misrepresentations of the record, and the persistent focus on race in the prosecution's file" as "the circumstantial evidence" it considered to "bear[] upon the issue of racial animosity" to conclude that the challenged strikes were "motivated in substantial part by discriminatory intent."[189]

Here, the trial judge found that "over the seven strikes the Commonwealth made, four were black, . . . three were white which is generally in fairly *good proportion* from the total mix on which they had to strike."[190] Deference to that finding is required because "the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed,"[191] and that "evaluation of the prosecutor's state of mind based on demeanor and credibility

---

[186] ECF No. 82 at 12.

[187] 195 L. Ed. 2d at 7.

[188] *Id.* at 12.

[189] *Id.*

[190] *Juniper*, 626 S.E. 2d at 413 (emphasis added).

[191] *Hernandez*, 500 U.S. at 365 (internal quotation marks omitted).

lies peculiarly within a trial judge's province."[192] In federal habeas review, the state court's "finding of fact concerning prosecutorial motive in exercising peremptory challenges," like other findings of fact, "'shall be presumed to be correct' and the habeas petitioner bears 'the burden of rebutting the presumption of correctness by clear and convincing evidence.'"[193] While Juniper argued that the trial court erred in counting venire member Malia Bailey as white,[194] her race was not otherwise determined at trial.[195] Juniper argued below that Bailey was "Hawaiian."[196] The trial court's refusal to find that Bailey was African-American and its finding that "it appears Ms. Bailey is white" were not unreasonable.

Moreover, the principal source for Juniper's assertion of the race of members of the venire other than Bailey is an affidavit from a law student who states he met seven members of the venire who signed statements about their race, which he summarized but did not attach.[197] The student also reported his own "observation" of the race of other jurors.[198] Indeed, the only evidence Juniper

---

192 *Id.*; *accord*, *Ayala*, 135 S. Ct. at 2199.

193 *Evans v. Smith*, 220 F.3d 306, 313 (4th Cir. 2000) (quoting 28 U.S.C. § 2254 (e)(1)).

194 JA 1356-57.

195 626 S.E.2d at 412 n.16.

196 ECF No. 82 at 5, JA 1343, 1356-57, 1391.

197 JA 1392

198 JA 1393.

offered that Hackworth is white was his law student investigator's assertion that he located criminal and traffic records for a Gerald Hackworth, Jr., which list the defendant as "white."[199] The law student himself did not claim certainty.[200] Juniper's reliance on such hearsay and speculation is not clear and convincing evidence rebutting the trial judge's express finding that the prosecution's strikes were "generally in fairly good proportion from the total mix on which they had to strike.[201]

The district court nevertheless gave Juniper the benefit of a *de novo* analysis of the trial court's ruling. It stated plainly that it had "not relied on factual findings of the trial court, but has instead limited its analysis to those facts that are clear and undisputed from the record."[202] Juniper asserts that, because the district court denied his discovery motion, he was "unable to present any training materials or notes the prosecution may have relied on in selecting his jury."[203] Juniper has not appealed that ruling, and omits that the district court found that Juniper failed to

---

[199] JA 1393 ¶ 19.

[200] *Id.*

[201] *Juniper*, 626 S.E. 2d at 413.

[202] JA 1469-70 n. 13.

[203] ECF No. 82 at 17.

show "good cause" for discovery.[204] A habeas petitioner ordinarily cannot show the requisite "good cause" for discovery based on defaulted claims.[205] And "good cause" requires more than allegations that would "bear upon" or "assist" the petitioner's claim; he must at a minimum set forth "specific allegations suggesting that the petitioner *will* be able to demonstrate that he is entitled to habeas corpus relief."[206] Juniper may not go on a fishing expedition in hopes of finding some evidence to support his allegations.[207]

Juniper failed to meet his burden to show a *Batson* violation. Under that circumstance, Juniper's defaulted claim of ineffective trial counsel has no merit; *a fortiori*, it is not a "substantial" claim.

### B. Juniper failed to establish that his state habeas counsel were ineffective in failing to present the defaulted claim.

Juniper asserts that his state habeas counsel were ineffective because they did not investigate a *Batson* claim. But the proffered "Declaration" from one of his

---

[204] JA 1330. *See Bracy v. Gramley*, 520 U.S. 899, 904 (1997) ("A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course"). Juniper also omits that the district court ultimately granted his motion in part where it found good cause. *See* JA 1224-25.

[205] *See Coleman v. Thompson*, 895 F.2d 139, 144-145 (4th Cir. 1990) (not entitled to hearing on defaulted claims), *aff'd*, 501 U.S. 722 (1991).

[206] *Stephens v. Branker*, 570 F.3d 198, 213 (4th Cir. 2009) (emphasis added).

[207] *See, e.g.*, *Calderon v. United States District Court* (*Nicolaus*), 98 F.3d 1102, 1106 (9th Cir. 1996).

state habeas counsel states only that he did not discuss raising such a claim, and that he had no strategic reason for omitting it.[208] Such after-the-fact opinions do not establish either prong of *Strickland*.[209] The Supreme Court has acknowledged the natural temptation for counsel to consider "whether a different strategy might have been better, and, in the course of that reflection, to magnify their own responsibility for an unfavorable outcome."[210] The reviewing court, however, must make "an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind."[211]

Juniper does not contend that counsel's overall performance in state court demonstrated anything other than "active and capable advocacy" on his behalf.[212] Counsel presented a series of amended petitions, and the claims he presented exhausted the 50-page limit then set by the state procedures.[213] In addition, state habeas counsel filed a 3,302-page appendix. State habeas counsel's performance fully satisfied the *Strickland* standards for effective counsel.

---

[208] JA 1396 ¶ 5.

[209] *See, e.g.*, *Premo v. Moore*, 562 U.S. 115, 125 (2011) (noting the distorting effect of hindsight); *Stamper v. Muncie*, 944 F.2d 170, 178 (4th Cir. 1991) (*Strickland* does not permit "Monday morning quarterbacking").

[210] *Richter*, 562 U.S. at 109.

[211] *Id.* (citing *Strickland*, 466 U.S. at 688).

[212] *See Richter*, 562 U.S. at 111 (appropriate test is whether "counsel's overall performance indicates active and capable advocacy.").

[213] *See* VA. SUP. CT. R. 5:7A(g).

Juniper did not demonstrate a substantial probability of a different result had state habeas counsel re-prioritized the claims actually asserted in state court to accommodate this claim.[214] Indeed, Juniper did not even attempt to do so, he simply argued for *de novo* review of the underlying claim. As the district court held, because Juniper could not have prevailed on his new *Batson* argument, his habeas counsel were not ineffective for not presenting it.[215]

Juniper's claim was therefore not substantial, and his default is not excused under *Martinez*. The district court properly dismissed the claim as procedurally barred.[216]

## IV. Juniper's defaulted claim that his trial counsel were ineffective in objecting to the trial court's exclusion of evidence of Juniper's future dangerousness in prison had no merit, and he therefore failed to establish that *Martinez* excused his default. (Claim VII).

Controlling state precedent holds that expert testimony regarding a defendant's risk of future dangerousness in prison is irrelevant and therefore inadmissible.[217] Juniper argues that his trial counsel were ineffective for not arguing that the controlling state precedents unconstitutionally limited his penalty

---

[214] *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011); *Richter*, 562 U.S. at 112.

[215] JA 24; *cf. Moody v. Polk*, 408 F.3d 141, 151 (4th Cir. 2005) (counsel not required to file frivolous motions).

[216] JA 1469.

[217] *Lovitt v. Commonwealth*, 537 S.E.2d 866, 878-79 (2000).

phase evidence.[218] Juniper also alleged that his trial counsel were ineffective in failing to make a more extensive proffer of the expert's excluded testimony.[219]

The claim was not presented to the state habeas court. The district court held that the defaulted claim had no merit, so that the procedural bar was not excused under *Martinez*. Juniper argued no other excuse to overcome the default.

### A. Juniper failed to establish that the defaulted claim was substantial.

On March 22, 2016, Juniper moved this Court to hold his case in abeyance[220] pending its decision in *Morva v. Zook.*[221] Juniper argued that when the Supreme Court of Virginia upheld the exclusion of certain testimony from his expert, it relied on "essentially the same reasoning as in *Morva*"[222] and that Morva had "diligently litigated" the same constitutional challenge Juniper advanced in his amended claim VII.[223] According to Juniper, the decision in *Morva* would "inform the ultimate resolution of Juniper's appeal."[224] This Court granted the motion.[225]

---

[218] ECF No. 82 at 24-26.

[219] *Id.* at 23.

[220] Case No. 16-2, ECF No. 13.

[221] Case No. 15-1 (4th Cir).

[222] Case No. 16-2, ECF No. 13 at 3.

[223] Case No. 16-2, ECF No. 13 at 6.

[224] Case No. 16-2, ECF No. 13 at 2.

[225] Case No. 13-7, ECF No. 50.

On May 5, 2016, this Court issued a unanimous published opinion in *Morva*,[226] rejecting the pertinent claim. Juniper now argues that his claim does *not* present the same constitutional challenge, asserting that *Morva* decided only that there is no federal constitutional right to appointment of a non-psychiatric expert.[227] But this Court also held that:

> The [state] court's classification of prison-environment evidence as irrelevant and therefore inadmissible is not unreasonable under U.S. Supreme Court precedent. Nor is the court's similar determination regarding statistical evidence of similarly situated inmates and instances of prison violence.[228]

Juniper now distinguishes *Morva* by arguing that his expert, Dr. Thomas Pasquale, presented a more "highly individualized" assessment than Morva's proffered expert had proposed, and that Dr. Pasquale's opinion should therefore have been admissible.[229] The district court held that Juniper did "not attempt to distinguish the testimony of Dr. Pasquale from the evidence excluded by Virginia

---

[226] *Morva v. Zook*, 821 F.3d 517 (4th Cir. 2016), *cert. denied*, 197 L. Ed. 2d 177 (2017)

[227] ECF No. 82 at 23 n.7.

[228] 821 F.3d at 526.

[229] ECF No. 82 at 22-23.

courts."[230] Juniper does not argue that the district court's holding was erroneous, and he cannot present a new argument on appeal which he did not present below.[231]

Even evaluating his defaulted *Strickland* claim *de novo*, as the district court did, the federal courts cannot apply a new rule of law. As the district court correctly held, "the Court must examine the constitutional effectiveness of a decision made by Juniper's trial counsel in January 2005. Juniper's counsel was not ineffective by failing to mount an assault on clearly established precedent."[232]

In fact, Juniper's trial counsel argued vigorously for the admission of Dr. Pasquale's opinion on this aspect of Juniper's "future dangerousness" and those arguments were pursued on appeal.[233] The Virginia Supreme Court affirmed the trial court's evidentiary rulings on the merits.[234] It carefully reviewed its long-standing precedent, holding that "what a person may expect in the penal system is

---

[230] *See* JA 1475.

[231] *Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 411 n.10 (4th Cir. 2010) ("the failure to present an argument to the district court constitutes waiver before this court.") (citing *United States v. Evans*, 404 F.3d 227, 236 n.5 (4th Cir. 2005)).

[232] JA 1477-78 (citing *Kornahrens v. Evatt*, 66 F.3d 1350, 1360 (4th Cir. 1995) ("an attorney's assistance is not rendered ineffective because he failed to anticipate a new rule of law").

[233] *Juniper*, 626 S.E.2d at 422-23.

[234] *Id.*

not relevant mitigation evidence."[235] The Supreme Court of Virginia held to its consistent, careful, application of *Lockett v. Ohio*,[236] that relevant mitigation evidence is evidence of the "character and record of the individual offender and the circumstances of the particular offense."[237]

And Juniper failed to show prejudice from his trial counsel's performance. "The proper prejudice inquiry asks whether the trial court would have made a different determination on the admissibility of Dr. Pasquale's testimony if trial counsel had raised a constitutional argument. Given the rejection of such arguments in Virginia, this Court cannot conclude that a different outcome would have resulted."[238] Indeed, as Juniper himself conceded below, the Supreme Court of Virginia repeatedly has rejected the identical arguments, based on the same authorities, in cases decided after Juniper's own direct appeal.[239] In light of those

---

[235] *Id.* at 423 (quoting *Cherrix v. Commonwealth*, 513 S.E. 2d 642, 653 (Va. 1999), and citing *Walker v. Commonwealth*, 515 S.E. 2d 565, 575 (Va. 1999)).

[236] 438 U.S. 586 (1978).

[237] *Juniper*, 626 S.E.2d at 422-23 (quoting *Lockett*, 438 U.S. at 601).

[238] JA 1476.

[239] JA 1372 n.13; *see Porter v. Commonwealth*, 661 S.E.2d 415, 438-41 (Va. 2008) (applying *Simmons*, *Skipper*, and *Williams*); *Morva v. Commonwealth*, 683 S.E.2d 553, 562 (Va. 2009) (applying *Simmons*, *Skipper*, and *Gardner*); and *Lawlor v. Commonwealth*, 738 S.E.2d 847, 883 (Va. 2013) (applying *Lockett* and *Woodson v. North Carolina*, 428 U.S. 280 (1976)).

subsequent decisions, Juniper cannot show the arguments he now alleges his trial counsel should have advanced would have succeeded – they would not.

Juniper nevertheless argues that Dr. Pasquale's opinions were admissible as mitigating evidence[240] under *Lockett* and *Tennard v. Dretke*.[241] That argument is wrong. *Lockett* held that "the Eighth and Fourteenth Amendments require that the sentencer . . . not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death."[242] The trial court excluded no such evidence from Dr. Pasquale.

*Tennard* did not hold, as Juniper suggests,[243] that states may not set any limit on mitigation evidence. In fact, *Lockett* did not "limit[] the traditional authority of a court to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of the offense."[244] *Tennard* rejected only the Fifth Circuit's requirement that mitigation evidence must have some "nexus" to the crime in question for its admission to be constitutionally required.[245] No "nexus"

---

[240] ECF 82 at 24-25.

[241] 542 U.S. 274 (2004).

[242] 438 U.S. at 604 (emphasis original) .

[243] ECF No. 82 at 25-26.

[244] 438 U.S. at 604 n.12.

[245] 542 U.S. at 284, 289.

rule is at issue in Juniper's case. More to the point, no precedent requires the admission of whatever evidence the defendant unilaterally labels "mitigation." Rather, a "mitigating factor is a factor arguing against sentencing this defendant to death; it is not an argument against the death penalty itself."[246]

Juniper also argues[247] that his trial counsel should have argued that Dr. Pasquale's opinions were admissible as rebuttal evidence, and that excluding them was contrary to *Gardner v. Florida*,[248] *Skipper v. South Carolina*,[249] and *Simmons v. South Carolina*.[250] Juniper's Statement of Issues, however, limits the question to their admissibility as mitigating evidence.[251] To the extent the Court may nevertheless reach the second question, Juniper's argument is not supported by the precedent he cites, and this Court already rejected the same arguments in *Morva*.[252]

---

[246] *United States v. Johnson*, 223 F.3d 665, 675 (7th Cir. 2000).

[247] ECF No. 82 at 25-26.

[248] 430 U.S. 349 (1977).

[249] 476 U.S. 1 (1986).

[250] 512 U.S. 154 (1994).

[251] ECF No. 82 at 1.

[252] 821 F.3d at 525 ("The Supreme Court of Virginia's conclusion that *Gardner*, *Skipper*, and *Simmons* do not support the constitutional rule Morva asserts is neither contrary to, nor involves an unreasonable application of, clearly established federal law.")

*Gardner* required an "opportunity for petitioner's counsel to challenge the accuracy or materiality" of an undisclosed presentence report relied upon by the court in imposing the death sentence.[253] The plurality opinion decided that the defendant "was denied due process of law when the death sentence was imposed, at least in part, on the basis of information which he had no opportunity to deny or explain."[254] Dr. Pasquale's proffer did not "deny or explain" any evidence introduced by the prosecution.

Likewise, *Skipper* held that "a defendant's disposition to make a well-behaved and peaceful adjustment to life in prison" is relevant exactly because it "is itself an aspect of his character that is by its nature relevant to the sentencing determination."[255] Again, the trial court excluded no such evidence from Dr. Pasquale. And other evidence demonstrated that Juniper had not made a peaceful adjustment to prison life.[256]

Finally, in *Simmons*, the Supreme Court held that "truthful information of parole ineligibility allows the defendant to 'deny or explain' the showing of future

---

[253] 430 U.S. at 356.

[254] *Id.* at 362.

[255] 476 U.S. at 7.

[256] *Juniper*, 626 S.E.2d at 397.

dangerousness."[257] Juniper's jury was instructed that Juniper would be ineligible for parole.[258]

The Virginia Supreme Court's decision in Juniper's direct appeal was squarely in line with controlling federal law. Its decision expressly distinguished *Skipper*, and the state precedent on which that decision relied also applied the very cases Juniper now cites.[259] In *Schmitt v. Kelly*, this Court agreed with the Virginia Supreme Court that *Simmons*, *Gardner*, and *Skipper* "do not define rebuttal evidence to include evidence that merely describes the general conditions of incarceration, as opposed to evidence about how the conditions of confinement would affect a particular defendant."[260] Virginia precedent fully accords with those cases, so there is no reasonable likelihood that arguing them would have resulted in a different outcome, either at trial or on appeal. Trial counsel is not ineffective for failing to make a meritless argument.[261]

The district court also correctly rejected Juniper's alternate argument that he

---

[257] 512 U.S. at 169.

[258] JA 507.

[259] 626 S.E.2d at 423-24, citing *Bell v. Commonwealth*, 563 S.E. 2d 695, 713-14 (Va. 2002) (applying *Skipper*, *Simmons*, and *Williams v. Taylor*, 529 U.S. 362 (2000)); *Burns v. Commonwealth*, 541 S.E. 2d 872, 893-94 (Va. 2001) (applying *Gardner*, *Skipper*, and *Simmons*); and *Cherrix*, 513 S.E.2d at 653 (applying *Skipper*, *Eddings v. Oklahoma*, 455 U.S. 104 (1982), and *Lockett*).

[260] 189 Fed. Appx. 257, 265 (4th Cir. 2006).

[261] *Moody*, 408 F.3d at 151 (counsel not required to file frivolous motions).

was prejudiced because the excluded testimony could have persuaded the jury to impose a life sentence.[262] Juniper's jury based the death sentences on its unanimous finding of both aggravators: future dangerousness and vileness.[263] Juniper's argument addresses only the future dangerousness aggravator.

> Dr. Pasquale's expert report and testimony, both during the trial and in voir dire, went entirely to Juniper's future dangerousness. This does nothing to expand the universe of evidence of or rebut the facts related to the vileness of the four murders at the center of the case. Accordingly, nothing in the record disturbs the jury's finding of vileness beyond a reasonable doubt.[264]

"In light of the independent, additional statutory aggravator of vileness, [Juniper's] death sentence would stand regardless of his *Martinez* claim."[265] Juniper was not prejudiced.

### B. Juniper failed to establish that his state habeas counsel were ineffective in failing to present the defaulted claim.

Juniper argues that his state habeas counsel "inexplicably" failed to raise this claim,[266] but he does not present any specific allegations that his state habeas counsel's failure to make a separate *Strickland* claim over trial counsel's omitting

---

[262] ECF No. 82 at 27-28.

[263] *Juniper*, 626 S.E.2d at 393.

[264] JA 1476-77 (citing *Tuggle v. Netherland*, 516 U.S. 10, 14 (1995) (per curiam) ("the invalidation of one aggravator does not necessarily *require* that a death sentence be set aside.")).

[265] *Teleguz*, 806 F.3d at 817.

[266] ECF No. 82 at 21.

his current arguments was itself deficient performance. Juniper asserts only that no "conceivable strategic decision" could support it.[267] The proffered "Declaration" from one of his state habeas counsel states only that he had no strategic reason for omitting such a claim.[268] Such after-the-fact opinions do not establish either prong of *Strickland*.[269] "Counsel also is not required to have a tactical reason – above and beyond a reasonable appraisal of a claim's dismal prospects for success – for recommending that a weak claim be dropped altogether."[270]

The district court found the omission perfectly explicable: because there was "no reasonable probability" Juniper could have prevailed on the constitutional arguments he now asserts, in light of long-standing Virginia precedent, his habeas counsel were not ineffective for not presenting them.[271]

Because Juniper's claim was not substantial, his default is not excused under *Martinez*. The district court properly dismissed the claim as procedurally barred.[272]

---

[267] *Id.*

[268] JA 1396 ¶ 6.

[269] *See, e.g.*, *Premo*, 562 U.S. at 125 (noting the distorting effect of hindsight); *Stamper*, 944 F.2d at 178 (*Strickland* does not permit "Monday morning quarterbacking").

[270] *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009).

[271] JA 1477-78.

[272] JA 1478.

## CONCLUSION

The Court should affirm the judgment of the district court.

Respectfully submitted,
DAVID W. ZOOK, WARDEN,
SUSSEX I STATE PRISON,

Respondent-Appellee herein.

By /s/ Matthew P. Dullaghan
Counsel

Matthew P. Dullaghan
Senior Assistant Attorney General
Virginia State Bar Number 22164
Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
Telephone: (804) 786-4073
Facsimile: (804) 786-1108
MDullaghan@oag.state.va.us
Counsel for Respondent-Appellee

**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

**Nos. 13-7(L) 16-2 Caption: Anthony Juniper v. David Zook, Warden**

**Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [x] this brief contains __12,590__ words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [ ] this brief uses a monospaced typeface and contains _______ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [x] this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman; *or*

   [ ] this brief has been prepared in a monospaced typeface using ______________ with ___________ characters per inch and __________.

__________/s/__________
Matthew P. Dullaghan
Attorney for Respondent-Appellant
Dated: April 3, 2017

## Certificate of Service

I certify that on April 3, 2017, the foregoing document was electronically filed with the Clerk of Court using the CM/ECF System, which will send notice of such filing (NEF) to the following registered CM/ECF users:

Elizabeth Hambourger, Esquire
Johanna Jennings, Esquire
CENTER FOR DEATH PENALTY LITIGATION
123 West Main Street, Suite 700
Durham, North Carolina 27701
elizabeth@cdpl.org
jjennings@cdpl.org

Robert Lee, Esquire
Dawn M. Davison, Esquire
VIRGINIA CAPITAL REPRESENTATION RESOURCE CENTER
2421 Ivy Road, Suite 301
Charlottesville, Virginia 22903
roblee@vcrrc.org
ddavison@vcrrc.org

__________/s/___________
Matthew P. Dullaghan
Senior Assistant Attorney General
Virginia State Bar Number 22164
Attorney for Respondent
OFFICE OF THE ATTORNEY GENERAL
202 North Ninth Street
Richmond, Virginia 23219
Telephone: (804) 786-4073
Facsimile: (804) 786-1108
MDullaghan@oag.state.va.us